James V. **AQUAVELLA** and Salmon Harvey, partners doing business as Glen Oaks Nursing Home, and Arista Development Corporation, Plaintiffs,

v.

Robert **FINCH**, Secretary of Health, Education and Welfare; the United States of America; and Aetna Life and Casualty Company, Defendants.

Civ. No. 1969–272.

United States District Court
W. D. New York.

July 30, 1969.

Denial of Motion Oct. 1, 1969.

---

Nixon, Hargrave, Devans & Doyle, Rochester, N. Y. (Michael T. Tomaino and Donald R. Adair, Rochester, N. Y., of counsel), for plaintiffs.

H. Kenneth Schroeder, Jr., U. S. Atty. (Stephen S. Joy, Asst. U. S. Atty., of counsel), for defendants.

JOHN O. HENDERSON, Chief Judge.

Plaintiffs Aquavella and Harvey are individuals doing business as Glen Oaks Nursing Home and have filed a complaint against all named defendants, alleging that the nursing home is and has been a provider of services pursuant to Title 42 U.S.C. § 1395 et seq., and that although as such it is entitled to reimbursement for reasonable costs as provided in those federal statutes, defendant Aetna, as agent for the Secretary of Health, Education and Welfare, has refused to make such payment. Plaintiffs further allege that the suspension of payments which has been ordered by the defendant secretary, if allowed to continue, will cause irreparable harm to the plaintiffs in that the payments in question constitute almost all of the revenue of the plaintiff nursing home and will force the dissolution of the business. Plaintiffs pray for a permanent injunction and money damages.

The parties are presently before the court in response to an order to show cause why a temporary restraining order should not be entered pursuant to Rule 65 of the Federal Rules of Civil Procedure. The defendants, in opposition to the prayer for a temporary restraining order, have moved to deny the same and to dismiss the complaint for lack of jurisdiction.

The affidavits attached to the moving papers shed some light on the facts.

The plaintiff nursing home cares for elderly patients, 59 out of 60 of whom are patients under the federal Medicare program of the United States Government. The home executed an agreement with the defendant secretary on April 3, 1967, to participate in the furnishing of services to Medicare patients pursuant to Title 42 U.S.C. § 1395cc. So far as the papers before the court indicate, the home regularly received payments under the agreement until some time prior to April 1969, when a periodic review of an unaudited cost report submitted by the home identified it as one to which unusually large amounts had been paid for ancillary services. The home, therefore, was scheduled for an on-sight review of its Medicare operation for billing procedures. During the week of April 21, 1969, this review was held, and it is the contention of the defendants that the review revealed certain billing irregularities practiced by the home. In general, the claims of the defendants are that the alleged irregularities discovered are as follows: supplying unnecessary and excessive amounts of physical therapy; billing for therapy unrelated to the patient's illness; billing for recreational therapy not covered under the Act; and increasing the semi-private routine charge four times within one year from $32.50 per day to $52.00 per day without furnishing adequate evidence to show that actual costs had increased correspondingly. The audit further revealed, it is alleged, that the home has been extended current financing in excess of $96,000 as of July 14, 1969. It is claimed that the home has been paid large amounts for non-covered services, and the secretary therefore has instructed his fiscal intermediary to make no further payments to the home until a complete audit is performed, or until sufficient information is obtained from the home to verify that former payments were proper, or to determine the amount of overpayment due to improper payments.

Defendants have moved to dismiss the complaint on the grounds that the court

lacks jurisdiction over the parties. The court will first address itself to that question for, absent jurisdiction, the court is powerless to issue the temporary restraining order requested by the plaintiffs. It is clear that the home has qualified as a provider of services under section 1395cc of Title 42 U.S.C. A subchapter of Title 42, concerning medical care to the aged, provides that judicial review may be had by an institution having the status of a nursing home in two situations. It may be entitled to a hearing under section 1395ff if dissatisfied with the secretary's determination that it is not a provider of services, or it is entitled to a hearing if the secretary should terminate the agreement filed under section 1395cc(b)(2). After such a hearing, section 1395ff provides for judicial review of the results of the decision reached after the hearing as provided in section 405(b), Title 42 U.S.C. Moreover, section 1395ii makes applicable to this subchapter section 405 (h) of Title 42 which provides: "No findings of fact or decision of the Secretary shall be reviewed * * * except as herein provided."

It appears, therefore, that Congress, in enacting this subchapter, provided for judicial review by an institution in only those two instances and intended that those judicial remedies be exclusive. Further evidence of this is contained in the report of the Senate Committee on Finance accompanying the legislation which recites at pages 54 and 55 that "hospitals, extended care facilities and home health agencies would be entitled to hearing and judicial review if they are dissatisfied with the secretary's determination regarding their eligibility to participate in the program. It is intended that the remedies provided by these review procedures shall be exclusive." Report 404, part 1, 89th Congress, First Session, page 54. It seems clear, therefore, that the congressional provision for judicial review in these two specific instances was not intended to confer jurisdiction on federal courts to review all determinations involved in the payment to hospitals under this subchapter. The court, therefore, finds that it lacks jurisdiction and the complaint must be dismissed.[1]

On motion of the defendants, the complaint is dismissed for lack of jurisdiction.

It is so ordered.

### On Motion to Amend Complaint

The plaintiffs have moved for leave to amend their complaint in Civil 1969–272. The plaintiff, Glen Oaks Nursing Home, is a provider of services under section 1395, Title 42, United States Code, and has not received monthly benefits for care rendered to Medicare patients because the defendant, Secretary of Health, Education and Welfare, has suspended such payments pending a detailed audit to determine if there has been any overpayment to the nursing home for past services. The affidavits originally filed in this case indicate that the secretary has some reason to believe that excessive reimbursement has been made to the provider.

The court originally dismissed the complaint and thereby denied all requests for temporary relief on the grounds of lack of jurisdiction. Since that order, dated July 30, 1969, plaintiffs have ceased to do business as a nursing home, allegedly because the failure to receive these monthly payments has ren-

---

1. In view of the above, the court need not reach the merits of the positions of the parties, but notes that section 1395x(v)(1) (B) provides for the making of suitable retroactive corrective adjustments where for a provider of services the reimbursement proves to be excessive. See also 20 C.F.R. § 405.620a. It appears to the court, therefore, that under existing statutes and regulations the secretary is authorized to take this action, and it also appears from the affidavits filed on behalf of the defendants that plaintiffs have failed to demonstrate the likelihood that they would prevail on the merits which would justify the issuance of a temporary restraining order.

dered it financially unable to continue operation. The plaintiffs, citing Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966) and Gonzalez v. Freeman, 118 U.S. App.D.C. 180, 334 F.2d 570 (1964), now urge that the court was in error in determining that it lacked jurisdiction to review judicially the suspension of monthly payments by the secretary.

In the *Cappadora* case, the Court of Appeals for the Second Circuit held that the Administrative Procedure Act (5 U.S.C. §§ 701–706) authorized judicial review of an administrative decision not to reopen "what had become a final and binding determination." 356 F.2d 1 at 5. In *Gonzalez*, an administrative determination, which resulted in a decision to debar the plaintiffs from doing business with the Commodity Credit Corporation for a period of five years, was subject to judicial review and such a decision could not be made without standards and procedures which would insure fair treatment of the aggrieved parties. In both cases there was a final determination made reviewable by the terms of the Administrative Procedure Act. In this case the payments to the nursing home have not been terminated, but have been suspended so that the secretary may, by further audit, determine the extent of past overpayments. The statutes establishing the program provide, among other things, that a provider of services must furnish information to the secretary concerning payments due when requested and, where more than a correct amount is paid, the secretary may make adjustments in other payments. 42 U.S.C. §§ 1395g, 1395gg(b). These sections demonstrate that the secretary may question amounts due to the provider without formally terminating the provider. Where the secretary attempts to terminate a provider, the regulations promulgated by the secretary provide for notice and a hearing. C.F.R. § 405.614. A decision to terminate and a notice of termination unquestionably would be a "final agency action" under the Administrative Procedure Act which provides that "A preliminary, procedural, or intermediary agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. In like manner, a final decision of the secretary concerning the exact amount of overpayments would be subject ulitmately to judicial scrutiny either on a suit by the plaintiffs for monies allegedly wrongfully held in breach of the contractual obligation of the secretary, or on a refusal by the plaintiffs to pay over any alleged overpayments on the grounds that the payments were perfectly proper when made. In light of the facts which the secretary has indicating that some overpayments have been made, the provisions of law allowing adjustment in monthly payments seems eminently wise in order to prevent improper depletion of the national treasury, and the court will not interfere with such intermediate action. Although the parties have been vague as to what current steps are being taken administratively to complete the audit in this case, until sufficient time elapses to diligently conclude that task, there has not been a final determination under the Administrative Procedure Act which would subject the suspension of payments decision to judicial review. Gonzalez v. Freeman, *supra*, was not a case where judicial review was allowed before a final decision of the secretary, but only after the plaintiffs had been notified that they were debarred for five years. Cf. Phillips Petroleum v. Brenner, 260 F.Supp. 45, *aff'd*, 127 U.S.App.D.C. 319, 383 F.2d 514 (1967), *cert. denied*, 389 U.S. 1042, 88 S.Ct. 785, 19 L.Ed.2d 833 (1968).

The motion of the plaintiffs to amend the complaint is granted. The motion for reargument of the motion to dismiss is granted. The amended complaint is dismissed for lack of jurisdiction on the grounds that the action of the secretary is not a final determination subject to judicial review.

It is so ordered.