**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Dr. Ira L. SNIDER, D.O. and**
**Tri-Therapy Associates, Inc.,**
**Defendants-Appellants.**

No. 84–1386.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 4, 1985.

Decided Dec. 17, 1985.

---

Jon Feikens (argued), William McCandless, Dice, Sweeney, Sullivan, Feikens, Hurbis and Foster, Detroit, Mich., Sylvester Lukis, Cramer, Haber & Lukis, P.C., Sheree R. Kanner, Pierson, Ball & Dowd, Washington, D.C., Benton L. Becker (argued), Coral Gables, Fla., for defendants-appellants.

Leonard R. Gilman, U.S. Atty., Karl Overman (argued), Detroit, Mich., for plaintiff-appellee.

Before LIVELY, Chief Judge; WELLFORD, Circuit Judge and BROWN, Senior Circuit Judge.

LIVELY, Chief Judge.

This case involves reimbursement under Part B of the Medicare Act, 42 U.S.C. §§ 1395 et seq., for physical therapy services provided to Medicare beneficiaries in ten nursing homes in the Detroit area. Dr. Ira L. Snider is an osteopathic physician who provided physical therapy services to nursing home patients through the vehicle of his wholly-owned corporation, Tri-Therapy Associates, Inc. Employees of Tri-Therapy actually administered the services to the patients. Dr. Snider billed the government for "physicians' services" and designated Tri-Therapy as payee for reimbursement. The government determined that neither Dr. Snider nor Tri-Therapy was eligible for reimbursement under Part B and sued to recoup payments in excess of $1,000,000. Following a trial the district court directed a verdict for the government and entered judgment in favor of the United States for $917,000.

An issue of first impression in this court is whether Rule 13(a) of the Federal Rules of Civil Procedure [1] requires a defendant sued only for declaratory and injunctive relief to file a counterclaim for money damages arising out of the same transaction that is the basis of the injunction claim where the district court advances the hearing on a motion for preliminary injunction and consolidates it with the trial on the merits pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure.[2] Other issues will be identified in this opinion.

## I.

On October 31, 1978 Dr. Snider and Tri-Therapy filed suit in the district court for an injunction to prevent the government from carrying out its intent to stop all payments on reimbursement claims by Dr. Snider under Part B of the Medicare Act. The complaint also sought a declaration that the threatened cutoff of payments was contrary to law. On November 1, 1978 the district court set a hearing for November 9 on the request for preliminary injunction and directed the government to file a response by November 6. On November 6 the government filed a motion to dismiss

---

1. Rule 13(a) provides in pertinent part:
   (a) **Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

2. Rule 65(a)(2) provides in pertinent part:
   (a) **Preliminary Injunction.**
   (2) *Consolidation of Hearing With Trial on Merits.* Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application.

for lack of jurisdiction and for failure to state a claim upon which relief could be granted, with a memorandum in support of its motion to dismiss and in opposition to a preliminary injunction. On November 9 the court commenced a hearing at which it became clear that important issues involving the administration of the Medicare Act were involved and that it might be possible to decide the merits of the plaintiffs' claim at a fully developed hearing on the request for a preliminary injunction. Following the hearing on November 9 the court met in chambers with counsel where it was agreed that an order would be entered advancing the trial of the action on the merits and consolidating it with a hearing on the application for preliminary injunction. Since the attorneys indicated that time would be required to prepare for the hearing, it was agreed that the government would continue to process and pay Part B claims submitted by Dr. Snider with a portion of all payments received by him or Tri-Therapy to be deposited into the registry of the district court. The trial was postponed several times in order to permit the attorneys to prepare fully, but payments continued under the November 9 order. The final hearing date was set for January 22, 1979 and the attorneys entered into an extensive stipulation of facts which was filed with a large amount of documentary evidence.

On January 9, 1979 at the last conference prior to the trial, the government filed a motion for summary judgment and thereafter the plaintiffs filed a cross-motion for summary judgment. The government never filed an answer and a hearing was held pursuant to Rule 65 beginning January 22, 1979.

On February 8, 1979 the district court entered summary judgment in favor of the government and filed an opinion. In the opinion the district court outlined the provisions of the Medicare Act involved in the case and found that the physical therapy services did not qualify under Part B as "physicians' services." The district court noted that a doctor may bill Medicare for his own personal services on a "reasonable fee basis" but physical therapy services

furnished by a qualifying clinic must be billed on a "cost reimbursement" basis. Tri-Therapy was not a qualifying clinic, and Dr. Snider sought payment on a reasonable fee basis. Tri-Therapy was eligible to receive Medicare payments only as the designated payee for services performed by Dr. Snider. The district court found that Dr. Snider did not render "physicians' services" to the nursing home patients because he did not participate either by providing services himself or directly supervising employees of Tri-Therapy as they administered physical therapy to the patients. Based on these conclusions the district court denied the application for a preliminary injunction. The concluding paragraph of the district court's opinion stated:

It should be further noted that nothing herein is directed toward the issue of payments previously made to Dr. Snider since that issue was not raised by the parties and was not before the court.

On appeal this court affirmed the judgment of the district court in an unpublished opinion entered on April 9, 1981 "on the basis of the opinion by Judge Guy."

## II.

The present action was begun on June 18, 1982, and was assigned to Judge Guy. In its complaint the government sought to recover payments made to Tri-Therapy as designated payee of Dr. Snider from January 1, 1977 through January 31, 1980 in the amount of $1,104,951. Dr. Snider and Tri-Therapy filed a motion to dismiss on the basis of Rule 13(a), Fed.R.Civ.P., contending that the claim asserted in the present action was required to be presented as a compulsory counterclaim in the 1978 lawsuit between the parties. The district court heard arguments on this issue and ruled that the compulsory counterclaim requirement did not apply and that the present action was not barred for failure to assert the claim in the earlier suit.

The district court gave two reasons for this conclusion. In the first place, the court questioned whether Rule 13(a) should

apply to an action for injunction where the parties and the court agree that time is of the essence and a trial on the merits is advanced and consolidated with a hearing on an application for preliminary injunction. The court stated that including the claim for recoupment of past payments in that proceeding would have delayed consideration of the injunction issue and considerably expanded the scope of the trial. The district court stated that it was the intention of the parties and its intention that the issues upon which the injunction question depended be decided without reference to any past payments to Dr. Snider or Tri-Therapy under the Medicare Act. As a second and more technical basis for the ruling, the district court pointed out that Rule 13(a) provides that the compulsory counterclaim requirement comes into effect "at the time of serving the pleading." The motion to dismiss filed and served by the government in the first action was not a "pleading" within the definition of Rule 7(a), Fed.R.Civ.P., and the government filed no pleading within that definition prior to trial of the case on its merits. The district court stated that the order of January 9, 1979 setting the matter for trial pursuant to Rule 65 was understood by the court and counsel to limit the trial to issues directly presented in the request for a preliminary injunction. Thus, the government was never required to file a pleading in which it would have been appropriate to include a counterclaim for past payments to Dr. Snider or Tri-Therapy.

Following this ruling the government filed a motion for summary judgment, contending that the only issue controlling its right to recover past payments had been decided in its favor in the earlier litigation. Thus, it argued for the application of collateral estoppel. The district court reviewed the proceedings in the first case and noted that the question there was whether the physical therapy services for which the government was being billed were performed by an employee of Dr. Snider under his direct supervision and incident to his professional services to the patient since it was uncontradicted that Dr. Snider himself

provided no such services directly to patients. The district court concluded that in denying relief to Dr. Snider in the injunction action it had necessarily answered this question in the negative and, further, that determination of Dr. Snider's liability in the second case turned entirely on the same question. Since the court had previously ruled in an action involving the same parties that Dr. Snider had not performed "physicians' services" which would have entitled him to reimbursement under Part B, it followed that he had collected the payments unlawfully and was required to return them. Thus, the district court granted partial summary judgment on the issue of liability.

At the same hearing the district court granted summary judgment on several affirmative defenses relied upon by Dr. Snider and Tri-Therapy, including their claim that they were entitled to retain the reimbursement payments under a *quantum meruit* theory. However, the court found that the amount of money which the government was entitled to recover was unclear and ordered a further hearing. Thereafter a jury trial was held at which documentary evidence was introduced and testimony of witnesses was heard. After both parties had rested, the district court granted a directed verdict for the government and entered judgment in the amount of $917,000.43.

### III.

Dr. Snider and Tri-Therapy have presented three issues on appeal. First, they contend that the district court erred in denying their motion to dismiss the complaint on the ground previously stated that the claim of the government was barred for failure to present it as a compulsory counterclaim in the earlier litigation. A decision in favor of the appellants on this issue would require us to reverse the judgment of the district court and direct that the complaint be dismissed. The appellants also argue that even if the claim was not barred by failure to assert a compulsory counterclaim, the district court erred in applying

collateral estoppel to determine liability in the second case when the issue of the government's right to recover Medicare reimbursement payments made to Dr. Snider and Tri-Therapy prior to the inception of the first lawsuit was specifically excluded from that suit. Dr. Snider and Tri-Therapy argue that it is inconsistent for the court to hold that the government was not required to assert its claim for earlier payments in the injunction action and yet to hold that determinations in that action are conclusive of the outcome in the second lawsuit. Finally, the appellants argue that it is undisputed that physical therapy services were provided to Medicare patients and that Tri-Therapy is entitled to recover for those services on a *quantum meruit* basis.

### A.

We agree with the district court that the government was not required to assert its claim for past payments as a counterclaim in the injunction action. This was not an action that followed the normal progression from filing to judgment. Tri-Therapy had a large payroll and would have been unable to continue in business if Medicare payments had been stopped permanently. Thus, it sought a quick answer in its injunction action. On the other hand, the government wanted to stop paying Tri-Therapy large sums each week for activities of Dr. Snider which it considered ineligible for Medicare reimbursement. The record makes clear that all parties in the original action wanted a prompt ruling.

The government's pleading in response to the complaint would not have been due until December 30, 1978. Nevertheless, in order to accelerate the process the district court directed the government to respond by November 6 and set the case for trial on November 28 on the merits and on the application for a preliminary injunction. Though the trial did not actually take place until late January 1979, the court and parties proceeded on the premise that the entire case had been advanced for decision under Rule 65. It would be inequitable to hold under these circumstances that the government forfeited its right to assert a claim that past payments to Dr. Snider were unlawful.

Rule 13(a) serves a salutary purpose in cases that progress normally. However, the rule should not be applied in such a way as to make it difficult for a court to dispose of an application for a preliminary injunction by advancing a case on the merits under Rule 65. The infusion of issues requiring proof of facts not germane to the decision whether to grant or deny injunctive relief would create such an obstacle. The actual proceedings in the later action by the government against Dr. Snider and Tri-Therapy illustrate this problem. The proof in the second case consisted of voluminous records of claims and payments, none of which was necessary for determination of the injunction issue.

Dr. Snider and Tri-Therapy rely primarily on *United States v. Aquavella*, 615 F.2d 12 (2d Cir.1979). The situation in *Aquavella* was similar to that presented in this case, but there are differences. In *Aquavella* the owners of an extended care facility brought suit to enjoin the government from suspending Medicare payments *and* to obtain money damages. The district court dismissed the action for lack of subject matter jurisdiction, but the court of appeals reversed and remanded for further proceedings. After remand of that case to the district court the government filed an answer and counterclaim for past payments. While that action was pending on remand the government filed a separate action against the owners to recover past payments. The separate action in which the government was plaintiff came to trial before the remanded case and the government obtained a judgment.

On appeal the Second Circuit held that the government's claim was a compulsory counterclaim which should have been asserted in the first action (and actually had been, after remand). Thus the court of appeals reversed the judgment in the action brought by the government. However, it did not deny the government's right to make its claim. Instead, the court of ap-

peals remanded with directions to consider the government's claim as a counterclaim in the still-pending original action, which had been remanded.

In *Aquavella* the court avoided the unjust result that would occur in the present case if the government's claim were dismissed with prejudice. If the district court had merely denied the application for a preliminary injunction in the earlier action without advancing the case on its merits under Rule 65, the first appeal to this court would have been interlocutory under 28 U.S.C. § 1292(a)(1). Regardless of how this court had decided the appeal, there would have been a remand, since the case would have remained on the docket of the district court during the interlocutory appeal. That would have been the time to require the government to assert its claim, because with the injunction issue settled, the parties then should have been required to address the merits. We do not believe the *Aquavella* court would have ordered dismissal of the government's claim with prejudice if the original action had been treated under Rule 65 and there had been no case pending in which the claim could be tried. One additional factor in *Aquavella* is that the owners had sought a money judgment in the first action, thus raising an issue related to the amount of payments previously made. In the present case Dr. Snider and Tri-Therapy sought only declaratory and injunctive relief.

#### B.

We also agree with the district court's holding that Rule 13(a) only requires a compulsory counterclaim if the party who desires to assert a claim has served a pleading. The Rule requires the party to state such a claim "at the time of serving a pleading." In *Lawhorn v. Atlantic Refining Co.*, 299 F.2d 353 (5th Cir. 1962), the question stated by the court was whether a compulsory counterclaim must be asserted by a party who successfully interposes a motion to dismiss a complaint for failure to state a claim. The court concluded that a party does not lose his

claim under these circumstances. Until the motion to dismiss is ruled upon it is not known whether the plaintiff has a claim. Without a valid claim there can be no counterclaim, compulsory or permissive. A motion to dismiss pursuant to Rule 12(b), Fed. R.Civ.P., is not a pleading as defined in Rule 7. There is no reason for a party to file a pleading while a motion to dismiss is pending.

In the present case the court did not explicitly postpone disposition of the motion to dismiss until trial on the merits. If the court had done this, Rule 12(a)(1) would have required the government to serve a responsive pleading within 10 days after notice of the court's action. However, instead of deferring disposition, the district court "telescoped" the entire process by resort to Rule 65. We conclude that the government was never required to serve a pleading in the first action, and thus Rule 13(a) did not come into play. We agree with the court in *Martino v. McDonald's System, Inc.*, 598 F.2d 1079, 1082 (7th Cir.), *cert. denied*, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979), where it stated that the drafters of the Civil Rules did not act carelessly, but chose the word "pleading" advisedly. Rule 13(a) serves the desirable goal of bringing all claims arising out of a transaction or occurrence before the court in a single action. However, where the rules do not require a pleading either because of pending motions or because the usual process by which the issues are formed has been displaced by the accelerated process permitted under Rule 65, the compulsory counterclaim requirement of Rule 13(a) is inapplicable.

Dr. Snider and Tri-Therapy also rely on *New Britain Machine Co. v. Yeo*, 358 F.2d 397 (6th Cir.1966), for the proposition that the compulsory counterclaim rule is mandatory. Our present holding does not conflict with *New Britain* because the rule is mandatory only when it applies. In the absence of a pleading, as we have held, no counterclaim is due under Rule 13(a). The actual holding in *New Britain* was that the district court did not abuse its discretion in

dismissing an action for damages by a party that had been a defendant in an earlier case and had failed to assert its claim. As this court pointed out, the first case in *New Britain* involved a lengthy trial over patent claims. During the proceeding the district court asked counsel for the defendant if a counterclaim would be filed, and the reply was "no." After a trial on the merits and judgment for the plaintiffs, the defendant sought to amend its answer by adding a counterclaim for alleged overpayment of royalties. When this motion was denied the defendant filed the second action seeking exactly the same recovery sought in the denied counterclaim. Under these circumstances, this court affirmed dismissal of the second action on the basis of Rule 13(a).

*New Britain* is an excellent example of the proper application of Rule 13(a). The defendant there did exactly what the rule is designed to prevent. The defendant filed an answer and the first case went forward for more than four years before it was concluded with a judgment for the plaintiffs. Halfway through this process the defendant unequivocally advised the court that there would be no counterclaim. The defendant had every opportunity to assert its claim in the first action, and no other provision of the Civil Rules made Rule 13(a) inapplicable.

## IV.

■ Dr. Snider and Tri-Therapy assert that the issue of the government's right to recoup earlier reimbursement payments was specifically excluded from consideration in the trial of the first case. Thus, according to this argument, collateral estoppel has no application and the district court erred in holding that the government was entitled to recover in the second case on the basis of holdings in the first case.

In considering the government's motion for summary judgment in the second case, the district court explained the concluding paragraph of its opinion in the earlier case as follows:

[T]o the degree that the Court concluded its first opinion with the statement that it was not deciding the issue of payments previously made to Dr. Snider since that was not raised by the parties, that is all the Court meant to indicate by that phraseology. It was not indicating that in the event that the question is ever raised, that there wouldn't be factual determinations which would not only have a bearing but, in fact, might be outcome-determinative.

Examining the decision in the first case we find that the district court framed the issue as follows:

Unless Dr. Snider is furnishing "physicians' services" in accordance with the Act, the Code and the Carrier's Manual, he is not entitled to be reimbursed on a reasonable fee basis as he has been up to the point in time of this lawsuit.

The district court then found that Dr. Snider had not furnished "physicians' services" under the Act, regulations or the manual. This issue was fully litigated in the first case. Viewed in this light, we do not believe the concluding paragraph of the first opinion had any greater meaning than that ascribed to it by the district court in its second opinion.

In *Allen v. McCurry*, 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980), the Supreme Court reviewed its recent treatment of collateral estoppel:

In recent years, this Court has reaffirmed the benefits of collateral estoppel in particular, finding the policies underlying it to apply in contexts not formerly recognized at common law. Thus, the Court has eliminated the requirement of mutuality in applying collateral estoppel to bar relitigation of issues decided earlier in federal-court suits, *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 [91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)], and has allowed a litigant who was not a party to a federal case to use collateral estoppel "offensively" in a new federal suit against the party who lost on the decided issue in the first case, *Parklane*

*Hosiery v. Shore,* 439 U.S. 322 [99 S.Ct. 645, 58 L.Ed.2d 552 (1979)]. But one general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate that issue in the earlier case. *Montana v. United States, supra* [440 U.S.] at 153 [99 S.Ct. at 973]; *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra,* at 328–329 [91 S.Ct. at 1442–43]. (Footnotes omitted). As explained in *United States v. Stauffer Chemical Co.,* 464 U.S. 165, 170–71, 104 S.Ct. 575, 578, 78 L.Ed.2d 388 (1984), "the doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action." (Citations omitted). There is an exception for " 'unmixed questions of law' " which arise in " 'successive actions involving unrelated subject matter.' " *Id.* at 171, 104 S.Ct. at 579 (quoting *Montana v. United States,* 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979)). However, the exception has no application to the present case.

The district court, after a trial on the merits, concluded in the first case that Dr. Snider did not and could not have rendered "physicians' services" to the patients in the ten nursing homes. This conclusion was based on Dr. Snider's own affidavit that approximately 325 patients per day were receiving physical therapy treatments from Tri-Therapy employees. There was other evidence of how Dr. Snider spent his days. Based on the entire record the district court reasonably found that there was no way that Dr. Snider could have rendered the personal supervision required for his involvement to constitute physicians' services. The district court stated this conclusion as its basis for denying the motion for a preliminary injunction, but it was also a determination that conclusively settled the issue raised in the second case.

Dr. Snider and Tri-Therapy have failed to raise any question in the second case to preclude the application of collateral estoppel. The district court did not err in granting summary judgment on the liability question in the second case.

### V.

We find no merit in the claim that Dr. Snider and Tri-Therapy were entitled to payment under *quantum meruit.* The equitable doctrine of *quantum meruit* requires a defendant to pay a plaintiff the reasonable value of services performed for the defendant even though there was no contract to do so. The theory underlying *quantum meruit* is that the law implies a contract when one person benefits from another person's act. The appellants have cited no case in which a claimant has been permitted to recover from the government on a *quantum meruit* claim in the absence of an actual contract. The Medicare Act provides for reimbursement under Part B only for personal services of a physician or services performed under the personal direction of a physician. There is no provision in the Act for reimbursement to a physician for physical therapy services performed by employees of some entity who do not act under the personal direction of a physician.

The Supreme Court recently wrote in *Heckler v. Community Health Services,* 467 U.S. 51, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984), "Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law...." Dr. Snider did not act with scrupulous regard for the requirements of the Act. Rather, he sought to bend the requirements of the Act to collect payments from the government that the Act does not authorize. Compare *Peterson v. Weinberger,* 508 F.2d 45 (5th Cir.), *cert. denied,* 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975).

We have not considered matters raised at oral argument on appeal that were never presented to the district court.

The judgment of the district court is affirmed.