Alvin PETERSON, Plaintiff,

v.

Officer Matthew REGINA, et al., Defendants.

No. 10 Civ. 1692(JSR).

United States District Court, S.D. New York.

March 28, 2013.

Alvin Peterson, New York, NY, pro se.

Ryan Glenn Shaffer, New York City Law Department, New York, NY, for Defendants.

## ORDER

JED S. RAKOFF, District Judge.

On January 18, 2012, the Honorable Gabriel W. Gorenstein, United States Magistrate Judge, issued a Report and Recommendation ("Report") in the above-captioned matter recommending that the Court grant in part and deny in part the motion for summary judgment filed by defendants Officer Matthew Regina, the New York City Police Department, and the City of New York. In particular, Judge Gorenstein recommended that the Court grant the motion as to plaintiff Alvin Peterson's claim for malicious prosecution but deny the motion as to plaintiff's claims for false arrest and false imprisonment.

On March 15, 2012, defendants filed objections to the Report, essentially reiterating their argument before Judge Gorenstein that all of plaintiff's claims are barred by a release plaintiff signed in connection with settling a separate action filed against some but not all of the same defendants. Plaintiff filed no objection to the Report, and thus has waived any right to further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 147–48, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010).

The Court has reviewed defendants' objections and the underlying record *de novo.* Having done so, the Court finds itself in complete agreement with the cogent and well-reasoned analysis set forth in the Report, which the Court hereby adopts by reference. Accordingly, for the reasons stated in the Report, the Court

hereby grants the motion as to plaintiff's malicious prosecution claim, and dismisses that claim with prejudice, but denies the motion as to plaintiff's false arrest and false imprisonment claims.

Consistent with Court's previous order of referral, the remaining claims remain with Judge Gorenstein for all pretrial purposes. The case should be ready for trial by no later than June 28, 2013. The Clerk of the Court is directed to close document number 46 on the docket of this case.

SO ORDERED.

## REPORT AND RECOMMENDATION

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

Plaintiff Alvin Peterson, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Officer Matthew Regina, the New York City Police Department, and the City of New York, alleging violations of his constitutional rights stemming from his arrest in January 2007. Defendants have moved for summary judgment. For the reasons stated below, this motion should be granted in part and denied in part.

## I. BACKGROUND

The following facts consist of those asserted by Peterson in sworn statements and facts asserted by the defendants that have not been contested by plaintiff through the submission of admissible evidence. We also reference certain documents filed in another action for the fact of their having been filed and not for the truth of any matters asserted in those filings. *See Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir.2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

### A. The Arrest and Prosecution

On January 21, 2007, Peterson was arrested at 230 Clinton Street in Manhattan. Plaintiff's Local Civil Rule 56.1 Statement of Undisputed Facts, filed Oct. 5, 2012 (Docket # 54) ("Pl. 56.1 Statement"). He was sweeping the lobby of his building that evening when an undercover officer approached him and asked if Peterson could help her buy drugs. *See* Complaint under the Civil Rights Act, 42 U.S.C. § 1983, dated Jan. 22, 2010 (annexed as Ex. F to Declaration of Ryan G. Shaffer in Support of Motion for Summary Judgment, filed July 20, 2012 (Docket # 47) ("Shaffer Decl.")) ("Compl."), ¶ II.D. Peterson told her he could not and she then left. *Id.* Minutes later, several police officers emerged from the stairway of the building, grabbed Peterson, and handcuffed and searched him. *Id.* Peterson then overheard a conversation in which one officer told another that Peterson was clean and did not have "pre-recorded buy money" in his possession. *Id.* Peterson heard an officer say, "I think we got the wrong guy," and heard another officer respond, "take him anyway." *Id.* Peterson was then placed in a van and taken to the 7th Precinct. *Id.* On April 17, 2007, Peterson was indicted by a grand jury for criminal sale of a controlled substance in the third degree. Pl. 56.1 Statement ¶ 2. On August 9, 2007, Peterson went to trial and was found not guilty. *Id.* ¶ 3.

### B. District Court Proceedings

On March 3, 2010, Peterson's complaint in this action was filed. We construe it—as do the defendants, see Memorandum of Law in Support of Defendants' Motion for Summary Judgment, filed July 20, 2012 (Docket # 50) ("Def. Mem."), at 1—to al-

lege claims of false arrest, false imprisonment, and malicious prosecution stemming from Peterson's January 21, 2007 arrest. On the same date the complaint was filed in this action, Peterson filed a complaint in a separate lawsuit, *"Peterson I,"* which alleged claims arising out of a different arrest. *See* Complaint under 42 U.S.C. § 1983, *Peterson v. Mejia,* 10 Civ. 1691(SAS) (S.D.N.Y. Mar. 3, 2010). In *Peterson I,* Peterson brought claims under section 1983 against police officer John Mejia, the New York Police Department, and the City, alleging that he was falsely arrested and imprisoned on July 15, 2008, for trespass and possession of a controlled substance after being stopped by Officer Mejia outside his home at 230 Clinton Street. *See id.* ¶ II.D. On April 19, 2011, an attorney appeared in *Peterson I* as well as in the instant case. *See* Notice of Appearance, filed Apr. 19, 2011 (Docket # 19); Notice of Appearance, *Peterson I,* 10 Civ. 1691 (S.D.N.Y. Apr. 19, 2011) (Docket # 29).

Eventually, plaintiff's counsel and counsel for the defendants in *Peterson I* signed a stipulation of settlement, which was "so ordered" by the Court on July 14, 2011. *See* Stipulation of Settlement and Order of Dismissal, dated July 14, 2011 (annexed as Ex. H to Shaffer Decl.) ("Stipulation"); *see also* Pl. 56.1 Statement ¶ 6. The stipulation provided that Peterson was releasing the City, its agencies, and any of its present or former employees "from any and all liability, claims, or rights of action which were or could have been alleged in this action, including claims for costs, expenses, and attorneys' fees." Stipulation ¶ 2. A separate paragraph of the stipulation provided

that Peterson would be required to sign "a General Release based on the terms of paragraph 2 above...." *Id.* ¶ 3. The stipulation contained only the caption and docket number for *Peterson I.*

As required by paragraph 3 of the stipulation, Peterson signed a document on June 30, 2011, that was labeled a "general release." *See* General Release, dated June 30, 2011 (annexed as Ex. I to Shaffer Decl.) ("General Release"); Pl. 56.1 Statement ¶ 7. This release stated,

> Know that I, Alvin Peterson, date of birth ..., Social Security No ...., plaintiff in the action entitled *Alvin Peterson v. Officer John Mejia, et al.,* 10 Civ. 1691(SAS), in consideration of the payment of Six Thousand ($6,000.00) Dollars to me by the City of New York, do hereby release and discharge the defendants; the defendants' successors or assigns; and all past and present officials, employees, representatives and agents of the City of New York or any agency thereof, from any and all claims that were or could have been alleged by me in the aforementioned action, including all claims for attorneys' fees, expenses and costs. This Release may not be changed orally.

*See* General Release; Pl. 56.1 Statement ¶ 8. The *Peterson I* case was closed and litigation continued in the instant case.

On December 21, 2011, Peterson's counsel was relieved. *See* Order, filed Dec. 21, 2011 (Docket # 31). Peterson then proceeded in this case *pro se.* After discovery concluded, the defendants filed the instant motion for summary judgment seeking dismissal of the complaint.[1]

---

1. *See* Notice of Motion for Summary Judgment, filed July 20, 2012 (Docket # 46); Shaffer Deck; Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts, filed July 20, 2012 (Docket # 48) ("Def. 56.1 Statement"); Defendants' Local Civil Rule 56.2 Notice to

*Pro Se* Litigant for Opposing Summary Judgment, filed July 20, 2012 (Docket # 49); Def. Mem. Peterson opposed this motion. *See* Affidavit in Support of Plaintiff's Opposition to Defendant[s'] Motion for Summary Judgment, filed Oct. 9, 2012 (Docket # 54) ("Pl. Mem.").

## II. *LAW GOVERNING SUMMARY JUDGMENT*

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed.R.Civ.P. 56(a); see also *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial,*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original) (additional citation omitted) (quoting Fed.R.Civ.P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) (citations omitted). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (alteration in original) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548) (internal quotation marks omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir.1996) (citing *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505). The same rules apply to a *pro se* litigant. *See, e.g., Bennett v. James,* 737 F.Supp.2d 219, 226 (S.D.N.Y.2010) ("Notwithstanding the deference to which a *pro se* litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion, [the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial.") (internal quotation marks and citations omitted), *aff'd,* 441 Fed.Appx. 816 (2d Cir.2011).

## III. *DISCUSSION*

### A. *The Effect of the Peterson I Settlement Agreement*

We first address defendants' argument that Peterson has released the City and its agents from the claims brought in the instant suit as a result of the general release and stipulation he signed in *Peterson I. See* Def. Mem. at 4–7.

---

Defendants' filed a reply brief. *See* Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, filed Nov. 16, 2012 (Docket # 56) ("Reply").

Peterson submitted a sur-reply. *See* Supplemental Response to Defendant's Absolute Immunity Argument, dated Dec. 21, 2012 (Docket # 59).

### 1. Governing Law

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir.2007). "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir.2004) (internal quotations omitted).[2] The "manifestation of mutual assent" must be "sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589, 693 N.Y.S.2d 857, 715 N.E.2d 1050 (1999).

"The threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir.2000). The meaning of an unambiguous contract "is a question of law for the court to decide," *id.* (citing *K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir.1996), and is determined solely by reference to the "four corners of the agreement," *Abundance Partners LP v. Quamtel, Inc.*, 840 F.Supp.2d 758, 767 (S.D.N.Y.2012)). The meaning of an ambiguous agreement, by contrast, is a question of fact to be determined by the factfinder where extrinsic evidence exists to guide the interpretation of the parties' intentions. *Revson*, 221 F.3d at 66 (citing cases). However, where language in a contract is ambiguous, summary judgment can be granted "if the nonmoving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Federal Ins. Co. v. American Home Assur. Co.*, 639 F.3d 557, 567 (2d Cir.2011) (citation and internal quotation marks omitted). Additionally, the meaning of an ambiguous agreement as to which no extrinsic evidence exists is a question of law to be determined solely by the court. *Revson*, 221 F.3d at 66.

A contract "is unambiguous when it has a definite and precise meaning and where there is no reasonable basis for a difference of opinion." *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir.1997). An ambiguous term exists, however, where "reasonable minds may differ" about its meaning. *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 430 (2d Cir.1992).

In this case, the relevant language appears in identical form both in a stipulation and in a release. The principles of interpretation governing a release are similar to those involving a contract. *See Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 (2d Cir.2001). Thus, "a release—like any contract—must be construed in accordance with the intent of the parties who executed it." *Id.* at 515. "As with contracts generally, the courts must look to the language of a release—the words used by the parties—to determine their intent, resorting to extrinsic evidence only when the court concludes as a matter of law that the contract is ambiguous." *Wells v. Shearson Lehman/Am. Express, Inc.*, 72 N.Y.2d 11, 19 (1988). A release will not be given effect unless it contains an "explicit, unequivocal statement of a present promise to release [a party] from

---

**2.** We consider New York law—as well as federal cases applying New York law—in interpreting the settlement and the release. *See Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir.1993) (holding that courts should look to state law in interpreting a contractual release of federal claims); *see also Torres v. Walker*, 356 F.3d 238, 245 (2d Cir.2004) (analyzing stipulation of dismissal memorializing settlement agreement under New York law).

liability." *Bank of Am. Nat'l Trust·& Sav. Ass'n ex rel. Zanuck v. Gillaizeau*, 766 F.2d 709, 713 (2d Cir.1985) (internal quotation marks omitted). Obviously, "a release may not be read to cover matters which the parties did not desire or intend to dispose of." *Cahill v. Regan*, 5 N.Y.2d 292, 299, 184 N.Y.S.2d 348, 157 N.E.2d 505 (1959); *accord Lefrak SBN Assocs. v. Kennedy Galleries*, 203 A.D.2d 256, 257, 609 N.Y.S.2d 651 (2d Dep't 1994).

### 2. Whether the "Could Have Been Brought" Language is Unambiguous

 The stipulation describes the document that was to be signed by plaintiff as a "general release"—a term that is repeated at the top of the page containing the release itself. But the stipulation and text of the release make clear that what was being sought was not in fact a "general release" as that term is normally understood. "[A] general release bars recovery on *any* cause of action arising prior to its execution." *Lambert v. Sklar*, 61 A.D.3d 939, 940, 877 N.Y.S.2d 452 (2d Dep't 2009) (emphasis added).[3] Instead, the stipulation and release in *Peterson I* bars Peterson from bringing suit only for claims that "could have been brought" in *Peterson I*. The City's brief conducts no analysis of what the phrase "could have been brought" means. Instead, it cites to cases that themselves largely look to case law governing permissive joinder under Fed. R.Civ.P. 20(a). The City's apparent argument is that, by using the "could have been brought" phrase, the parties intended to have it interpreted by reference to the law of permissive joinder.

The Court is somewhat doubtful that the release language necessarily evinces an intent by the parties to incorporate permissive joinder law. There is just as strong an argument that the release was intended to express the fact that the scope of the settlement would parallel the scope of res judicata—a concept that typically employs language similar to that found in the release. *See, e.g., Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 255–256 (2d Cir.1995) (res judicata bars claims that "could have been brought" in the prior proceeding).[4] Nonetheless, the Court recognizes that case law frequently looks to permissive joinder law to construe this

---

**3.** The terms of a "general release"—in contrast with a "specific release"—normally release without limitation all claims that a party ever had against a party up until the date of the release. *See, e.g., Lucio v. Curran*, 2 N.Y.2d 157, 161, 157 N.Y.S.2d 948, 139 N.E.2d 133 (1956) (releasing " 'all manner of action … causes of action, suits, … controversies, … claims and demands whatsoever' which plaintiff 'ever had, now has or which his heirs, executors, or administrators, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever …' "); *Lipiner v. Santoli*, 60 A.D.3d 1001, 1002, 876 N.Y.S.2d 476 (2d Dep't 2009) ("all actions, causes of action, suits … damages, judgments … whatsoever from the beginning of the world to the day of the date of this Release"). The City has frequently entered into settlements with general release language. *See, e.g., Waters v. Douglas*, 2012 WL 5834919, at *3 (S.D.N.Y. Nov.14, 2012)

(plaintiff agreed to release the City and any employees from "all claims" from "the beginning of the world"); *Robinson v. Pierce*, 2012 WL 833221, at *5–6 (S.D.N.Y. Mar.13, 2012) (same).

**4.** Some cases interpreting similar language in a settlement have suggested that using res judicata case law as a reference source would render the stipulation's language meaningless on the ground that the settlement would have had res judicata effect anyway. *See, e.g., Lewis v. City of New York*, 2011 WL 3273939, at *6 (E.D.N.Y. July 29, 2011) (citation omitted). But parties acting out of caution often put terms into settlement agreements that might have applied even in the absence of the terms' inclusion—for example, a term that the law of a particular state will apply to the interpretation of the agreement.

term—largely in cases involving releases drafted by the City using the "could have been brought" language. *See Twine v. Four Unknown N.Y. Police Officers,* 2012 WL 6184014, at *8–11 (S.D.N.Y. Dec. 12, 2012); *Chepilko v. City of New York,* 2012 WL 2792935, at *3–4 (S.D.N.Y. July 6, 2012); *Gittens v. City of New York,* No. 10 Civ. 8502(PAC), 2011 WL 10618708, at *1–3 (S.D.N.Y. May 11, 2011). Accordingly, we will do so here since the City cannot prevail even under the analysis they implicitly propose.

To decide whether plaintiff "could have brought" the claims in this case in *Peterson I,* two rules are potentially applicable inasmuch as venue is not at issue. First, Fed.R.Civ.P. 18(a) provides, "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." If the defendants in the two cases were identical, it would not be necessary to go further. The defendants were not identical, however. Plaintiff named as defendants in *Peterson I* Officer John Mejia, the New York City Police Department, and the City of New York. Plaintiff named as defendants in this case Officer Matthew Regina, the New York City Police Department, and the City of New York. Accordingly, to have made the instant claim part of *Peterson I,* plaintiff would have had to have named Officer Regina as a defendant in *Peterson I.* The rule governing his inclusion as a defendant is Fed.R.Civ.P. 20(a)(2), which permits a plaintiff to join additional defendants if

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Both of these requirements must be met. *See Deskovic v. City of Peekskill,* 673 F.Supp.2d 154, 159 (S.D.N.Y.2009).

■ In determining what constitutes "the same transaction, occurrence, or series of transactions or occurrences," a court must approach the question "on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp., USA,* 596 F.Supp.2d 821, 826 (S.D.N.Y.2008) (citing 7C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 1653, at 270 (1972)). Courts often look to the use of a similar phrase in Fed.R.Civ.P. 13(a)(1)(A), which governs compulsory counterclaims. *See Twine,* 2012 WL 6184014, at *8. The Second Circuit has stated that Fed.R.Civ.P. 13(a) requires the court to "assess the logical relationship between the claims and determine whether 'the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit.'" *Barnhart v. Town of Parma,* 252 F.R.D. 156, 160 (W.D.N.Y.2008) (citing *United States v. Aquavella,* 615 F.2d 12, 22 (2d Cir.1979)).

*Peterson I* stemmed from Peterson's arrest on July 15, 2008. *See* Compl. at ¶ II.D, *Peterson I,* 10 Civ. 1691 (S.D.N.Y. Mar. 3, 2011) (Docket # 2). This arrest occurred after Officer Mejia spotted Peterson outside of his building "ringing a friend[']s intercom," ordered him to stop, and demanded that he produce identification. *Id.* Officer Mejia subsequently arrested him for trespass and possession of a controlled substance. *Id.* On March 9, 2009, the charges against Peterson were dismissed on speedy trial grounds. *Id.* In the instant case, by contrast, Peterson was arrested a year and a half earlier, on January 21, 2007, while inside the lobby of his building. Pl. Mem. at 1. He was arrested by a different officer, Officer Regina. *Id.*

The charge was for sale of a controlled substance and this case against him proceeded through trial, where he was found not guilty. *Id.* at 2.

█ The defendants argue that "the only difference" between *Peterson I* and the instant suit "is that this lawsuit arises out [of] a different underlying incident in which plaintiff again claims the same constitutional violations." Def. Mem. at 6. But the difference cited by the City is itself a crucial one. There is no allegation or evidence that these two arrests were related in any way. The arrests took place over a year apart, different officers were involved, different criminal charges were leveled, and the criminal prosecutions proceeded and ended differently. It is settled that joinder is improper where "the plaintiff does no more than assert that the defendants merely committed the same type of violation in the same way." *Twine,* 2012 WL 6184014, at *9 (internal citations and quotation marks omitted); *accord George v. Smith,* 507 F.3d 605, 607 (7th Cir.2007) ("Unrelated claims against different defendants belong in different suits."); *Ross v. Meagan,* 638 F.2d 646, 650 n. 5 (3d Cir.1981) ("A coincidental similarity in the underlying facts will not permit ... join[der of unrelated claims]."), *overruled* on *other grounds by Neitzke v. Williams,* 490 U.S. 319, 328, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

█ Case law makes clear that "[i]n the absence of a connection between Defendants' alleged misconduct, the mere allegation that Plaintiff was injured by all Defendants is not sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)." *Deskovic,* 673 F.Supp.2d at 167 (internal citations and quotation marks omitted) (severing claims of section 1983 violations brought by prisoner against prison officials for discrete events occurring during his incarceration); *accord Lau v. Harrington,* 2012 WL 3143869, at *3 (E.D.Cal. Aug. 1, 2012) (severing claims brought against multiple defendants involved in plaintiff's detention because "[t]here are no facts identifying a single event that brought about these various claims or explaining how the claims are otherwise related."). The mere fact that both of Peterson's suits involve alleged false arrests by New York City police officers at the same physical location is insufficient to show that these arrests were part of "the same . . . series of transactions or occurrences." At a minimum, adjudicating plaintiff's claims would require an examination of probable cause on two entirely different sets of factual circumstances. Thus, there would have been no basis for allowing their joinder in a single lawsuit. *See, e.g., Twine,* 2012 WL 6184014, at *8–10 ("[T]he fact that Twine asserted the same type of violation (false arrest) against [officers involved in defendant's first arrest] on the one hand, and [officers involved in defendant's second arrest] on the other, is insufficient to support joinder under Rule 20(a)."); *accord Ketchuck v. Ferris,* 2011 WL 3666594, at *3–4 (N.D.N.Y. Mar. 31, 2011) (where two plaintiffs brought claims based on separate arrests, the Court severed the claims because "while the claims asserted by the two share common themes and therefore present related issues of law, the facts associated with each are different"); *Smith v. Goord,* 2006 WL 2850597, at *3 (W.D.N.Y. Sept. 22, 2006) (no joinder of claims against defendants at different correctional facilities for civil rights violations because "there is [little] overlap between the named defendants in both complaints; the events at issue in both complaints are separated by more than a year; and, there is no suggestion that the original defendants were involved in the alleged retalia-

tory actions taken against [plaintiff] in a different facility over a year later.").

As already noted, the defendants' brief performs no analysis of Rule 20 but instead lists a number of cases that barred claims where the plaintiff had executed a release containing similar language. Def. Mem. at 5. We find these cases to be either unpersuasive or irrelevant. Some of these cases relied on common claims for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), to connect lawsuits based on otherwise distinct incidents. *See Chepilko v. City of New York*, 2012 WL 2792935, at *3–4 (E.D.N.Y. July 6, 2012); *Gittens v. City of New York*, No. 10 Civ. 8502(PAC), 2011 WL 10618708 at 1–3 (S.D.N.Y. May 11, 2011). While we doubt that a common *Monell* claim by itself would be sufficient to permit joinder under Rule 20(a), it is unnecessary to reach the question because neither the complaint in *Peterson I* nor the complaint in this case contains a *Monell* claim or even any *Monell* allegations, as defendants concede, *see* Def. Mem. at 13–15. The same is true of the complaint in *Peterson I*. Thus, the purported existence of such claims cannot be used to evaluate joinder under Rule 20.

Another case cited by the defendants, *Lewis*, 2011 WL 3273939, is irrelevant because *Lewis* never reached the issue of whether the plaintiff "could have" brought the disputed claim in the settled action. Instead it found that the plaintiff had actually brought the claim in the settled action because he had made a motion to supplement his complaint that was pending at the time the parties reached a settlement. *Id.* at 7. *Brodeur v. City of New York*, 2005 WL 1139908 (E.D.N.Y. May 13, 2005), is irrelevant because it involved two claims that arose out of the same arrest. *Id.* at *4–5. Similarly, *Willsea v. Theis*, 1999

WL 595629 (S.D.N.Y. Aug. 6, 1999), involved two copyright claims that arose from the same transaction, and *Sibersky v. Borah, Goldstein, Altschuler & Schwartz*, 2002 WL 1610923 (S.D.N.Y. July 22, 2002), dealt with claims brought by a tenant that all arose out of the rental of the tenant's apartment.

Other cases cited by the defendants are irrelevant because they involved either true general releases or other releases that were not limited to claims that "could have been brought" in the settled case. *See, e.g., Graham v. Empire Bail Bonds*, 2010 WL 1849295, at *7 (E.D.N.Y. May 7, 2010) (releasing "all actions ... from the beginning of the world to the day of the date of this release") (capitalization omitted); *Madison Square Garden, LP v. Nat'l Hockey League*, 2008 WL 4547518, at *6 (S.D.N.Y. Oct. 10, 2008) (release of claims relating to "any hockey operations or any NHL activity").

The case relied on most heavily by the defendants is *Tromp v. City of New York*, 465 Fed.Appx. 50 (2d Cir. Mar. 8, 2012). *See* Def. Mem. at 7. In *Tromp*, the plaintiff had earlier brought suit for unspecified "constitutional violations arising out of his arrest." 465 Fed.Appx. at 52. He settled the earlier case and released the defendants from any claims that "were or could have been alleged" in that suit, *id.*—language identical to Peterson's release. He then brought suit alleging "constitutional violations"—again, unspecified—arising out of an arrest on a different date. *Id. Tromp* held that the release in the settled case barred the prosecution of the new claims. *Id.* at 52–53.

We begin by noting that *Tromp* is a summary order that lacks precedential effect. *See* 2d Cir. Local R. 32.1.1(a). Beyond this, the case lacks persuasive value. First, *Tromp* does not conduct an analysis under Rule 20 or any other doctrine

that would elucidate whether the claims pursued there "could have been brought" in the settled action. Instead, *Tromp* inexplicably quotes the legal standard applicable to true *general* releases—that is, releases that bar all claims without limitation. *See id.* at 52 (" 'Words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies.' ") (quoting *A.A. Truck Renting Corp. v. Navistar, Inc.*, 81 A.D.3d 674, 675, 916 N.Y.S.2d 194 (2d Dep't 2011)).[5] *Tromp* mentions the incorrect standard a second time. In concluding that the plaintiff's claim was barred by the prior release, *Tromp* emphasized that the claim arose "out of separate, 'pre-existent' events." *Id.* at 52. The "separate, 'pre-existent' event[ ]" standard is not only inapplicable but is directly contrary to the "same transaction" standard of Rule 20(a)(2).

Finally, in the portion of the opinion in which it announces that the plaintiff's claims are barred, *Tromp* articulates an entirely different standard—noting that the arrest at issue was "similar in nature" to the arrest in the settled case. *Id.* Without elaboration, *Tromp* concludes that "therefore" the new arrest claim "could

have been alleged" in the settled case. *Id.* This "similar in nature" standard, however, is not supported by a single case cited in the opinion.

We respectfully decline to follow *Tromp* because it repeatedly cites a legal principle that governs release language not involved in that case and because it applies a legal test that is unsupported by any case law. Moreover, as already described, its result cannot be squared with case law regarding permissive joinder of parties under Rule 20(a). It is of no moment that a second unpublished opinion from the Second Circuit cites, in dictum, a version of one of *Tromp's* incorrect tests, *see Fernandez v. City of New York*, 502 Fed.Appx. 48, 49 (2d Cir.2012) (referring to the release language as barring claims arising from "separate, prior events"), because *Fernandez* cites only *Tromp* in support. Finally, we are aware that the case of *Castro v. City of New York*, 2012 WL 5289490 (E.D.N.Y. June 26, 2012), cites *Tromp* extensively and also uses a "similarity" standard to conclude that the release there—in a false arrest case using identical language as was used here—barred pursuit of a prior false arrest claim. But because, as already noted, we do not see justification for *Tromp's* use of "similar[ity]" as the appropriate test, we respectfully decline to follow *Castro* as well.[6]

---

**5.** While *A.A. Truck Renting Corp.* does not quote the release language involved in that case, its statement of the law is simply a quotation lifted directly from the controlling case of *Lucio*, 2 N.Y.2d at 161–62, 157 N.Y.S.2d 948, 139 N.E.2d 133. The release in *Lucio* was a true general release, which released the defendants from "all manner of action causes of action, suits, controversies, claims and demands whatsoever which plaintiff ever had, now has or which his heirs, executors, or administrators, hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever to the day of the date of these presents." *Id.* at 161,

157 N.Y.S.2d 948 (internal punctuation omitted). In other words, the release in *Lucio* contained no limitation to claims that "could have" been brought in the settled action.

**6.** In an apparent effort to make sense of the opinion in *Tromp*, the court in *Twine* dug up the defendants' brief on appeal and noted that "the City specifically relied upon the plaintiff's *Monell* claims in arguing to the Second Circuit that joinder of later-filed claims to a previously-settled action would have been proper under Rule 20." *Twine*, 2012 WL 6184014, at *10. While this might explain the result reached in *Tromp*, it does not cure the

### 3. *Extrinsic Evidence*

█ For the reasons just stated, we conclude that far from unambiguously reflecting the intent of the parties to bar Peterson's arrest claim in this case, the release language unambiguously reflects the intent of the parties *not* to bar that claim. But even if we found the release provision ambiguous, there is powerful extrinsic evidence that the parties did not intend Peterson's claim in this case to be barred by the release in *Peterson I*. Specifically, after the release was signed in July 2011, both sides conducted extensive litigation of this case. This litigation included the City's multiple requests to extend the discovery period, the Court's consideration of various discovery disputes raised by plaintiff (none of which related any issue of a purported prior settlement), and the City's request for the issuance of an order to depose the plaintiff in prison, *see* Letter from Ryan G. Shaffer to the Honorable Gabriel W. Gorenstein, dated May 18, 2012 (Docket # 60).

Moreover, on January 18, 2012, the City sent a letter to the Court asking that a settlement conference be scheduled in this case, stating that the parties were "hopeful that this matter can be resolved." Letter from Ryan G. Shaffer to the Honorable Gabriel W. Gorenstein, dated Jan. 18, 2012 (Docket # 34). In the current briefing, the City never explains why it would have asked the Court to hold a settlement conference in a case that had already settled. The City certainly cannot claim its attorney in this case was unaware that Peterson had signed a release in *Peterson I* because the attorney who litigated this case—and who asked for the settlement conference—was the very same attorney who signed the stipulation of settlement in

*Peterson I*. Nor could the City claim that it was unaware of the claim in this case when it settled *Peterson I* because the complaint in this case had been filed long before the settlement in *Peterson I*. Indeed, the City at one point sought to have a joint settlement conference in both cases and the Court acquiesced to the City's request to have a single deposition that would cover both cases. *See* Letter from Ryan G. Shaffer to the Honorable Gabriel W. Gorenstein, dated Mar. 4, 2011 (Docket # 17).

In conclusion, even if the Court were to find ambiguity in the wording of the release language, the extrinsic evidence available to it reflects that the parties did not intend the release in *Peterson I* to bar the instant complaint.

### B. *Peterson's Section 1983 Claims*

Because Peterson's claims here are not barred by the settlement in *Peterson I*, we turn next to defendant's motion for summary judgment on the malicious prosecution claim.

█ 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a claim under section 1983, Peterson must show that he was denied a constitutional or federal statutory right and that

---

defects in the legal tests it articulates. In any event, if the connection between the plaintiff's two *Monell* claims was indeed the unstated basis of the ruling in *Tromp*, it would have no bearing here because, as already noted, there were no *Monell* claims in Peterson's filings.

the deprivation of that right occurred under color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Section 1983 does not grant any substantive rights but rather "provides only a procedure for redress for the deprivation of rights established elsewhere," such as in the Constitution or a federal statute. *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994).

 "To sustain a § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir.2003). To prevail on a claim of malicious prosecution under New York State tort law, a plaintiff must show "(1) that the defendant commenced or continued a criminal proceeding against [the plaintiff]; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Id.* accord *O'Brien v. Alexander,* 101 F.3d 1479, 1484 (2d Cir.1996). Thus, "[t]he absence of probable cause is an essential element of a claim for malicious prosecution." *McClellan v. Smith,* 439 F.3d 137, 145 (2d Cir. 2006). The probable cause determination relevant to a malicious prosecution claim differs from that of a false arrest claim only insofar as "the existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced . . ., not the time of the preceding warrantless arrest." *Mejia v. City of New York,* 119 F.Supp.2d 232, 254 (E.D.N.Y.2000); *accord Davis v. City of New York,* 373 F.Supp.2d 322, 333 (S.D.N.Y.2005). Because it is clear that plaintiff cannot prove the third element of a malicious prosecution claim—

that is, that there was no probable cause to believe the prosecution against Peterson could succeed—it is not necessary to consider any of the other elements.

 The existence of probable cause to pursue a prosecution is presumed when an individual is indicted by a grand jury. *See, e.g., McClellan,* 439 F.3d at 145; *Hill v. Melvin,* 2006 WL 1749520, at *13–15 (S.D.N.Y. June 27, 2006) ("An indictment by a grand jury creates a presumption of probable cause to prosecute that defendant.") (internal quotation marks and citation omitted), *aff'd,* 323 Fed.Appx. 61 (2d Cir.2009). This presumption is rebuttable only "by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino v. City of New York,* 331 F.3d 63, 69 (2d Cir.2003) (internal citations omitted); *accord Green v. Montgomery,* 219 F.3d 52, 60 (2d Cir.2000). A plaintiff must "present more than mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith to rebut the presumption." *Ramashwar v. Espinoza,* 2006 WL 23481, at *8 (S.D.N.Y. Jan. 5, 2006) (internal quotation marks omitted) (citing cases), *aff'd,* 231 Fed.Appx. 26 (2d Cir.2007). The required showing must be of misconduct so serious as to "erode the premise that the grand jury acts judicially." *Rothstein v. Carriere,* 373 F.3d 275, 284 (2d Cir.2004) (internal quotation marks and citation omitted).

 In his opposition brief, Peterson alleges that there is a "real possibility that the officers lie[d] to obtain an indictment." Pl. Mem. at 7. Peterson supports this claim by arguing that the identification of him by officers as an individual who sold drugs to the undercover officer was "to[o] general to meet the constitutional standard of the

4th amendment," that there was "no other evidence to present to the Grand Jury to show that plaintiff had committed a crime, i.e.; plaintiff did not have any drugs, nor, did he have the alleged prerecorded buy money," and that because of this dearth of evidence, the defendants must have lied before the Grand Jury to secure an indictment. Pl. Mem. at 5, 7.

"[W]here a plaintiff's only evidence to rebut the presumption of the indictment is his version of events," courts have found such allegations insufficient to rebut the presumption of probable cause. *Brandon v. City of New York*, 705 F.Supp.2d 261, 273 (S.D.N.Y.2010). Here, Peterson has supplied only his suspicions of impropriety as proof of the defendants' misconduct before the grand jury. Peterson relies on *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir.2003), as support for his argument that he can rebut the presumption of probable cause without proof of misconduct during grand jury proceedings. Pl. Mem. at 7. In *Boyd*, however, the plaintiff presented proof of impropriety: namely, the police booking sheet which indicated that the plaintiff was arrested in a different location from that which the officers alleged in their grand jury testimony. *Boyd*, 336 F.3d at 77; see *also Brandon*, 705 F.Supp.2d at 273–74 (when two officers had conflicting stories, with one supporting plaintiff's version of events, it moved the court "beyond a simple conflict of stories or mistaken memories and into the possibility that . . . [the officers] lied in order to secure an indictment"); *McClellan*, 439 F.3d at 145–46 (defendants' testimony was inconsistent throughout plaintiff's prosecution, enabling the plaintiff to overcome the presumption of probable cause). Here, Peterson has not presented any such "competing testimony plus," *Brandon*, 705 F.Supp.2d at 273, and therefore is unable to rebut the presumption of probable cause created by the grand jury indictment.

Even if Peterson had been able to marshal evidence sufficient to show that Officer Regina lied in the grand jury, he would still fail to make out a claim for malicious prosecution because police officers are entitled to absolute immunity for their testimony before the grand jury. *See Rehberg v. Paulk*, —— U.S. ——, ——, 132 S.Ct. 1497, 1510, 182 L.Ed.2d 593 (2012). Rehberg held that officers testifying in a grand jury enjoy absolutely immunity from suit. *See id.* at 1508 ("It would . . . be anomalous to permit a police officer who testifies before a grand jury to be sued for maliciously procuring an unjust prosecution when it is the prosecutor, who is shielded by absolute immunity, who is actually responsible for the decision to prosecute."); *accord Del Col v. Rice*, 2012 WL 6589839, at *14 n. 19 (E.D.N.Y. Dec. 18, 2012) (citing *Sankar v. City of New York*, 2012 WL 2923236, at *2–3 (E.D.N.Y. July 18, 2012)). Therefore, Peterson's claims for malicious prosecution must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Docket # 46) should be granted in part and denied in part. Defendants' motion to dismiss the case in its entirety based on the release in *Peterson I* should be denied. Defendants' motion for summary judgment on the malicious prosecution claim should be granted. Plaintiff's claim for false arrest and false imprisonment were not the subject of any motion and thus remain to be tried.

## *PROCEDURE FOR FILING OBJEC-TIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of

Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Jed S. Rakoff, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Rakoff. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010).

Dated: January 18, 2013.